FILED
SEP 16 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HOLLY J.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

22-CV-06487-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 10)

Plaintiff Holly J.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 6) is granted, and defendant's motion (Dkt. No. 7) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff filed for DIB and SSI on April 20, 2020, with an alleged onset date of August 31, 2017. (Administrative Transcript ["Tr."] 15, 238-44). The applications were initially denied on July 16, 2020, (Tr. 15, 63-84), and upon reconsideration on November 6, 2020. (Tr. 15, 85-120). Plaintiff filed a written request for a hearing on December 16, 2020. (Tr. 15, 166-67, 171-84). On August 17, 2021, Administrative Law Judge ("ALJ") David Begley held a telephone hearing at which Plaintiff participated, along with her non-attorney representative. (Tr. 30-62). A vocational expert also testified. The ALJ issued an unfavorable decision on September 3, 2021. (Tr. 12-29). The Appeals Council ("AC") denied review. (Tr. 1-6). This case followed.

**DISCUSSION**

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

Preliminarily, the ALJ found Plaintiff's last date insured to be December 31, 2018. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2017, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; cluster C personality disorder; bipolar disorder; and alcohol use disorder. (Tr. 17-18). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-20). After step three, but prior to step four, the ALJ found Plaintiff to have the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations,

> simple, routine, repetitive tasks; can work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no direct interaction with the general public.

(Tr. 20-23). At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 23). At step five, the ALJ found that other work existed in significant numbers in the national economy that Plaintiff could perform. (Tr.23-24). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 24).

IV.     *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because at step 3 of the sequential analysis, the ALJ failed to explain adequately why Plaintiff did not meet Listings 12.04 and 12.06. The Court agrees.

The ALJ considered medical Listings 12.04 and 12.06 and found Plaintiff did not meet the paragraph B or C requirements of the listings. (Tr. 18-19). Paragraph B requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, (listing) §§ 12.04(B) and 12.06(B). Paragraph C requires:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Listing §§ 12.04(C) and 12.15(C).

Here, the ALJ failed to provide an adequate explanation as to why Plaintiff does not meet the Listings, especially because the record evidence seemingly indicates that the requirements of Listings 12.04 and 12.06 are met. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982); *Sobolewski v. Apfel*, 985 F. Supp. 300, 315 (E.D.N.Y. 1997) (citing *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980)). The ALJ was required to explain why the evidence does not satisfy the requirements of the Listing. *See Naumovski v. Colvin*, 2014 WL 4418101, *7 (W.D.N.Y. Sept. 8, 2014); *Brown ex rel. S.W. v. Astrue*, 2008 WL 3200246, *10 (N.D.N.Y. Aug.5, 2008) (quoting *Giles v. Chater*, 1996 WL 116188, *5 (W.D.N.Y. Jan.8, 1996)); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (quoting *Berry,* 675 F.2d at 469). The lack of explanation and analysis of the evidence prevents meaningful judicial review. *See Aviles-Guzman v. Comm'r of Soc. Sec.*, 2021 WL 663979, *8 (E.D.N.Y. Feb. 18, 2021).

The ALJ failed to cite any evidence relating to the second and fourth paragraph B criteria and then summarily cited to every treatment note in the record in relation to the first and third areas of functioning. (Tr. 19 (citing Tr. 309-1186, 1193-1327, 1337-1658)). "[T]he ALJ's conclusory statements and sweeping citations to the expansive record in this case frustrates meaningful review by the Court." *Angela G. v. Comm'r of Soc. Sec.*, 2020 WL 7706568, *6 (W.D.N.Y. Dec. 29, 2020). This is not a case in which the ALJ discussed the evidence accurately elsewhere in the decision. *See Wright v. Berryhill*, 2018 WL 3993442, *5 (D. Conn. Aug. 21, 2018). The ALJ oversimplified the record, and his conclusory rationales do not explain the level of impairments. For example, relating to the finding of mild limitation in understanding, remembering or applying information, the ALJ

reasoned, "Mental status exams often demonstrated depressed mood, anxious affect, and impaired judgment and poor impulse control. Upon examination the claimant was often characterized as liable [*sic*] and tangential with lack of insight and frequent emotional outbursts." (Tr. 19 (citing Tr. 309-1186, 1193-1327, 1337-1658)). The ALJ provided the identical rationale for finding a moderate limitation with regards to concentrating, persisting or maintaining pace and added that Plaintiff "reports frequent crying spells and overwhelming anxiety." (Tr. 19 (citing T 309-1186, 1193-1327, 1337-1658)). However, this rationale does not explain why Plaintiff had a mild or moderate limitation in the two areas of functioning as opposed to marked or extreme limitations (Tr. 19). It is also unclear why the objective findings support only mild limitations in one area and then the same evidence supports moderate limitations in another area of functioning. "An ALJ is required to '*both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Doxey v. Comm'r of Soc. Sec.*, 2019 WL 2325076, *6 (W.D.N.Y. May 31, 2019) (quoting *Perry v. Berry*hill, 2019 WL 1092627, at *2 (4th Cir. Mar. 8, 2019) (emphasis in original)). "Otherwise the reviewing court is 'left to guess about how the ALJ arrived at his conclusions, and, as a result, cannot meaningfully review them.'" *Id.*

The ALJ's analysis also omits additional supportive findings throughout the decision, and it is unclear how the additional positive and supportive findings were considered at step 3. In addition to the findings noted by the ALJ, the record further contained additional mental status examination findings of: disheveled appearance (Tr. 511); appearing older than stated age (Tr. 465); increased motor activity (Tr. 382, 514); fidgeting (Tr. 382); lively gesturing (Tr. 382); moving around the room (Tr. 382);

restlessness (Tr. 514); inability to sit still (Tr. 514); slowed psychomotor activity (Tr. 640, 667); indirect eye contact (Tr. 532, 569, 1603); avoidant eye contact (Tr. 376, 386, 397, 454, 479, 485, 488, 506, 656, 1457, 1603, 1621); limited eye contact (Tr. 1202, 1363, 1509, 1565, 1577, 1606, 1618); talkative speech (Tr. 316, 323, 329, 341, 380, 1174, 1220, 1231, 1239, 1246, 1257); pressured speech (Tr. 545, 631); rapid speech (Tr. 358, 382, 397, 420, 429, 469, 488, 514, 537, 549, 569, 656, 1185,1457); interrupting at times (Tr. 569); soft speech (Tr. 479); constricted affect (Tr. 638); accelerated affect (Tr. 488, 514); restricted affect (Tr. 397, 454, 503, 532); depressed affect (Tr. 316, 323, 329, 341, 380, 391, 437, 494, 496, 499, 632, 640, 667, 1174, 1202, 1220, 1231, 1239, 1246, 1257, 1509); sad and/or tearful affect (Tr. 383, 386, 454, 1202, 1231, 1363, 1457, 1509, 1565, 1578, 1603, 1606, 1618); lively affect (Tr. 383); dysphoric mood (Tr. 494, 496, 512); irritable mood (Tr. 386, 397, 532, 537, 549, 569); anxious mood (Tr. 316, 323, 329, 341, 358, 380, 391, 418, 437, 465, 479, 506, 549, 638, 1174, 1185, 1202, 1220, 1231, 1239, 1246, 1257, 1363, 1457, 1462, 1509, 1565, 1578, 1603, 1606, 1618, 1622, 1654); neutral mood (Tr. 320); sad mood (Tr. 1202, 1509); negative rumination (Tr. 488, 569, 638, 1462, 1622); blocked thought process (Tr. 472); ruminative thought process/content (Tr. 418, 494, 496, 534); preoccupations or preoccupied thought content (Tr. 437, 506, 509, 1202); fearful thought content (Tr. 1457); racing thought process (Tr. 488); fair concentration (Tr. 316, 323, 329, 341, 380, 391, 488, 638, 1174, 1202, 1221, 1231, 1247, 1257, 1363, 1509, 1565, 1578, 1607, 1619); fair attention span (Tr. 499, 512, 534, 545); and fair insight (Tr. 316, 323, 326, 329, 335, 342, 358, 376, 380, 383, 386, 391, 397, 420, 429, 437, 454, 465, 469, 479, 485, 488, 494, 496, 499, 503, 506, 509, 512, 515, 532, 534, 537, 545, 570, 629,

632, 638, 656, 1175, 1185, 1202, 1221, 1231, 1239, 1247, 1257, 1457, 1462, 1509, 1603, 1622, 1654).[3]

Most, if not all, of above findings were not discussed in the ALJ's decision at step 3 or elsewhere in the decision, and it is unclear why the above findings do not account for more severe limitations. (Tr. 21-22). "While the ALJ's decision need not 'mention [ ] every item of testimony presented" or "reconcile explicitly every conflicting shred of medical testimony,' the ALJ may not ignore or mischaracterize evidence of a person's alleged disability." *Cook v. Colvin,* 2015 WL 5155720, at *7 (S.D.N.Y. Sept. 2, 2015) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (per curiam)); *see also Christopher B. v. Comm'r of Soc. Sec.,* 2023 WL 110117, *8 (W.D.N.Y. Jan. 5, 2023) (citing *Ronald E. v. Kijakazi,* 2022 WL 6190240, *3 (W.D.N.Y. Oct. 7, 2022); *Michael A. v. Comm'r of Soc. Sec.,* 2022 WL 2669917, *3 (W.D.N.Y. July 11, 2022)). "While some of this evidence is discussed by the ALJ in the written determination, the ALJ's failure to engage in a meaningful discussion of why he concluded this evidence did not satisfy these Listings was error." *Petranella P. v. Comm'r of Soc. Sec.,* 2023 WL 2154768, *5 (W.D.N.Y. Feb. 22, 2023) (citing *Flake v. Comm'r of Soc. Sec.,* 2016 WL 7017355, *6 (N.D.N.Y. Nov. 10, 2016), report and recommendation adopted, 2016 WL 7017396 (N.D.N.Y. Dec. 1, 2016)).

---

[3] The record also contains findings from mental status examinations showing: labile mood (Tr. 383, 488, 509, 514, 1185, 1462); labile affect (Tr. 386, 469, 479, 1457); depressed mood (Tr. 316, 323, 329, 335, 341, 376, 386, 380, 391, 418, 437, 454, 465, 469, 472, 479, 485, 503, 532, 593, 605, 629, 638, 656, 1603, 1174, 1202, 1220, 1231, 1239, 1246, 1257, 1363, 1509, 1565, 1578, 1606, 1618, 1622); anxious affect (Tr. 316, 323, 329, 341, 380, 391, 494, 496, 534, 545, 632, 640, 667, 1174, 1202, 1220, 1231, 1239, 1246, 1257, 1509); tangential thought process (Tr. 499); fair to poor impulse control (Tr. 397, 469, 479, 485, 488, 506, 509, 515, 1185); and fair or impaired judgment (Tr. 316, 323, 329, 342, 380, 391, 397, 418, 437, 465, 479, 485, 488, 494, 503, 506, 509, 515, 1175, 1185, 1202, 1221, 1231, 1239, 1247, 1257, 1363, 1457, 1462, 1509, 1565, 1578, 1603, 1607, 1619, 1622, 1654).

Moreover, at step 3, the ALJ does not mention or address the medical opinion of treating Nurse Practitioner Katie Rauber and treating Licensed Clinical Social Worker David Szuligt, who opined that Plaintiff has greater limitations than those found by the ALJ. Their opinion seems to indicate that Plaintiff meets the criteria in paragraphs B and C of the 12.04 and 12.06 Listings.

In sum, "[a]n ALJ is required to explain his determination that a claimant failed to meet or equal the listings '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the [l]istings.'" *Yeomas v. Colvin*, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (quoting *Rockwood v. Astrue*, 614 F.Supp.2d 252, 273 (N.D.N.Y.2009). Here, the lack of explanation and analysis of the evidence prevents meaningful judicial review. *See Aviles-Guzman v. Comm'r of Soc. Sec.*, 2021 WL 663979, *8 (E.D.N.Y. Feb. 18, 2021). This was error and the case must therefore be remanded for further explanation.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is granted and defendant's motion for judgment on the pleadings (Dkt. No.7) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   September 16, 2025
         Buffalo, New York

                                               MICHAEL J. ROEMER
                                               United States Magistrate Judge